# EXHIBIT A.

# SOWRN DECLARATION BY OMAR VAZQUEZ-AVENDANO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
(CASE NO. 7:16-CR-00876-S3-011)

| | |
|---|---|
| OMAR VASQUEZ-AVENDANO<br>aka EL TORO,<br>　　Petitioner-Defendant.<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>　　Respondent-Plantiff. | §<br>§<br>§<br>§　DECLARATION BY<br>§　OMAR VASQUEZ-AVENDANO<br>§<br>§<br>§ |

　　The affiant, Petitioner herein being duly sworn to says as follows:

(1) My name is Omar Vasquez-Avendano and I am over 21 years of age.

(2) I am of a sound mind, and currently I am incarcerated serving a sentence of 196 months.

(3) I submit my decleration in support of my motion to vacate, correct, or set aside a sentence pursuant to 28 U.S.C. § 2255.

(4) I hereby affirm and confirm all facts contained herein and in a § 2255 motion as true and correct to the best of information and knowledge.

(5) I have been in custody since the day I was arrested from my home at 8006 S. Lorel St. in Burbank, Illinois.

(6) My family and I have been living at 8006 S. Lorel Street for almost ten years before my arrest.

(7) When we first attempted to purchase our property at S. Lorel Street, both my wife and my credit was terrible so my father-in-law offered to help.

(8) In the end we decided to rent the house instead of buying.

(9) The loan officer adviced my father-in-law to buy the house and rent to us.

(10) As a result of this advice, both my father-in-law and Rodrigo Ro-

- 1 -

man used joint credit and income to purchase the house and rent to us.

(11) It was to my knowledge then that Rodrigo Roman was a truck driver and that is how he and my father-in-law were able to purchase the house.

(12) Apart from the housing transaction, I do not recall having any interactions with Rodrigo Roman.

(13) Sometime later we learned the house was under foreclosure proceedings. As a result of this discovery my wife attempted to purchase the house, and did so successfully due to her improved credit.

(14) Before my arrest I personally owned a Porche Cayane GTS, which I bought from a private party as a defect. After successfully purchasing the car, I changed the title into my name. (See Mov. Exh. B).

(15) Before my arrest and conviction to the instant case, I had been arrested three times, but no conviction resulted in any of the arrests.

(16) One of the arrest was based on public nuisance, second was based on an argument with my wife and the third instance was based on a traffic infraction where drugs were discovered.

(17) In addition to the three arrest, I had been stopped once where my car was searched for drugs and none were found. Then there was a search warrant on a farm, that I was present at the time where no contraband nor drug paraphanelia was found.

(18) In the early morning hours of June 16th, 2016, we were awaken by a door bell. My wife was the first one to get up, put her clothes on and straighten herself before me.

(19) Before I could grab my t-shirt and shorts my wife was ready and voluntereed to answer the door.

(20) As she headed downstairs, I put on my shorts and t-shirt before two agents entered the bedroom.

(21) One agent introduced himself, and informed me that they have an arrest warrant for me, before he ordered me to turn around and hand-

cuffed me.

(22) While one was handcuffing me the other asked about the two phones that were on top of the nightstand, along with pill bottles and the i-pad tablet that was on the floor.

(23) I did admit to be the owner of both phones, the pill bottles on top of the night stand and the tablet on the floor. Then I was escorted out of the room and downstairs.

(24) The agents then handed me over to another agent at the door, before I was taken outside the house and remained there for about 45 minutes.

(25) As I was taken out of the room, one agent remained in the room, and the one who walked me out returned to the house after handing me off.

(26) After the agents finished conducting the search and interviewing my wife, they came out and I was taken into custody before I was extradited to Texas.

(27) While in Texas, I remember meeting with my lawyer in a few occassions, where I was informed of the drug related charges against me.

(28) For the most part I was in a state of confussion about why I was indicted in Texas, based on confiscated drugs that were not known by me.

(29) Furthermore, I questioned through my lawyer on how I conspired with Marco Benavides-Arteaga whom I knew nothing of.

(30) Also I questioned how I conspired with Jose Roman, on illegal activities that were not known to me, and never did I participate on either one of them.

(31) Throughout these questions, my lawyer at no point took the time to help me understand how I became part of the conspiracy in question.

(32) In relationship to the evidence, my lawyer had informed me that the government had found incriminating evidence in what is assumed to be my blackberry phone. Then he told me that my codefendents asserted I knew and coordinated the transactions in question, but no such evi-

dence was shared.

(33) Before entering into a plea agreement my lawyer briefly informed me that at sentencing, the court will be using sentencing guidelines as a tool to sentence me. But only during the PSR revision, did I learn the applicability of the guideline as it relates to my case.

(34) When I questioned about the sentencing guidelines, my lawyer concluded that questions will have to wait until after the probation officer provides the sentencing recommendations.

(35) In the question of the alleged transactions my lawyer insisted that the government had evidence showing, I coordinated a delivery with Lechuga and passed Jose Roman's number.

(36) I was quick to point out that the theory in question was flawed, because I did not do such coordination. Then I pressed him for evidence but he shared none with me.

(37) Instead counsel informed me that I should not be concerned with the issue because he was going to file a motion to suppress the evidence discovered from the blackberry.

(38) We never revisited the issue of evidence that demonstrated I coordinated activities between Lechuga and Jose Roman and the evidence discovered from the blackberry.

(39) I further informed the counsel that the narrative that I coordinated the delivery of cocaine using PPM text and passed a number that belongs to Prieto can not be true, hence it should be further investigated.

(40) Also I questioned for evidence to support my association with cocaine seized from Jose Roman on March 5th, 2016 as well as the 120 kilograms of cocaine that was seized on June of 2016.

(41) In all the cases, I assured him that I was not involved at any le-

vel in all the transactions in question. Furthermore, I encouraged him to question all the parties involved in the said transactions.

(42) Example, Jesus Cepeda was not known to me and I was never in contact with him, and he was never in contact with me.

(43) My counsel on the other hand encouraged me to proceed with a change of plea and all the issues in question would be addressed at sentencing.

(44) When I questioned the wisdom of entering into a plea agreement that is inconsistent with evidence, or actual events; my lawyer assured me that is how the negotions in federal criminal cases are handled. He insisted that all the issues in contention will be addressed during the sentencing phase.

(45) Since I had never been in such proceedings before, I conceeded to my counsel's advice and agreed to a change of plea.

(46) During a review of PSR, I raised the same questions to drug quantity and all other sentencing elements.

(47) I further questioned why such elements were not part of early discussions where I agreed to a change of plea without being fully informed about these specific enhancements.

(48) My lawyer informed me that he could not predict what the Probation Officer could recommend, but we have the opportunity to challenge them at sentencing.

(49) As a result of that advice again, I proceeded to sentencing assuring that the lawyer would investigate my questions and adequetely present his findings at sentencing.

(50) Unfortunately at sentencing my lawyer did not present any speci-

fic findings from his investigations over all the issues in question. This included leadership, firearm and drug quantity.

I do affirm under penalty of perjury that the foregoing is true and correct upon information and belief and not willfully false.

Executed on March    , 2019.

By _____
Omar Vasquez-Avendano
Fed. Reg. No.
FCI Oakdale II OB-A
P.O. Box 5010
Oakdale, LA - 71463