# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### McCALLEN DIVISION

OMAR VAZQUEZ-AVENDANO, )

   Petitioner, )

                     )        **MEMORANDUM OF LAW**

   Vs. )

                     )        ***Crim No. 7:16-CR-00876-11***

UNITED STATES OF AMERICA )

   Respondent. )

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY PURSUANT TO 28 U.S.C 2255.

-------------------------------------------------------------------------------------------------------

Omar Vazquez-Avendano ("Vazquez"), hereby acting Pro se, respectfully moves to vacate, Set Aside, or Correct his sentence pursuant to the present 28 U.S.C 2255 motion. Petitioner respectfully requests that this Honorable Court make the proper findings and provide relief from a conviction and sentence that was imposed herein in violation to the United States constitution and laws of the United States. Attached to this Motion petitioner presents Memorandum of Points and Authorities in support of his motion. In addition, Vazquez attached a Declaration by Omar Vazquez-Avendano in support of the arguments presented throughout the present motion. **See. Exhibit . A.**

Petitioner urges claims of ineffective assistance of counsel, as well as that the plea of guilty was entered improvidently, with wrong advice of counsel, and without understanding of the effect of the plea, or his rights

# I.    JURISDICTION

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law. Or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside of correct the sentence. Id. *28 U.S.C 2255*. See *Davis v. United States, 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974)*; *United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996)*.

## II.    TIMELINESS

In relevant part the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA") as contained *in 28 U.S.C 2255*, paragraph 6, provides that:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(a). the date on which the judgment of conviction became final.

Vazquez's direct appeal was denied on September 4, 2018. Vazquez's shall have until September 4, 2019 to file his timely habeas corpus petition. Additional 90-days shall be added pursuant to de mandates of *Clay v. United States, 537 U.S. 522 (2003)*, because Vaquez's did not file for writ of certiorari in the Supreme Court of the United States.

## III.    STATEMENT OF THE CASE

On November 22, 2016, a grand jury out of the Southern District of Texas charged that from on or about June 2011, to on or about June 16, 2016, in the Southern District of Texas and within the jurisdiction, Omar Vazquez-Avendano and multiple defendants did knowingly and intentionally conspired and agreed together and with other persons known and unknown to the Grand Jury, to possess with intent to distribute a controlled substance. (*Doc. No. 674*). The controlled substance involved was 5-kilogrtams or more of a mixture or substance containing a detectable amount of cocaine a Schedule II controlled substance. All in violation of Title 21, United States Code, Section *846, 841(a)(1), and 841(b)(1)(A)*.

On July 5, 2017, Omar Vazquez-Avendano entered into a plea agreement and plead guilty to Count One of a Third Superseding indictment. (Doc. No. 542).

On September 18, 2017, Omar Vazquez-Avendano was sentenced to be imprisoned for a total term of 196 months. Additionally, to a term of 5-years of supervised releasewere imposed.

Omar Vazquez-Avendano appealed from the judgment of the district court. On September 4, 2018, the United States Court of Appeals for the Fifth Circuit denied his appeal and dismissed it as frivolous.

## VI.        *INEFFECTIVE ASSISTANCE OF COUNSEL*

The Constitution guarantee a criminal defendant the right to effective assistance of counsel. U.S. Const. Amend VI. The test for ineffective assistance of counsel has two parts. One, it must be shown that the defense counsel's conduct was deficient, i.e., that it fell bellow an objective standard of reasonableness. Two, it must show that such conduct prejudiced the defendant, i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceedings would have differed. *See. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).*

## V.    *ARGUMENTS PRESENTED FOR REVIEW*

A. **Whether Counsel Rendered Ineffective Assistance by Not Properly Articulating a Motion to Suppress Evidence From an Illegal Search That Took Place at Vazquez-Avendano's House at the Time of His Arrest. Evidence Fruit of the Poisonous Tree.**

According to the record of this case, on or about June 16, 2016, at 6:20, Federal Agents working for the DEA and HIS executed an arrest warrant on Vazquez's home at 8006 S. Loren St., Burbank, Illinois where he has lived for almost ten years before this matter (See. Declaration of Omar Vazquez-Avendano at. 6. **Exhibit A**). Although an existing warrant for his arrest was properly executed, no warrant to search his home, vehicles or other property existed or was provided to Vazquez either to his wife Evelyn Vazquez who was present at the execution of Vazquez's arrest.

The history of this case levels that on June 16, 2016, agents knocked on the door of this two-story residence, Vazquez's wife, Evelyin Vazquez, answered the door,

informed the agents that Vazquez was asleep in the couple's upstairs bedroom, and then remained downstairs with some of the agents while three agents went directly to Vazquez's bedroom.

During the suppression hearing the government provided testimony that before entering Vazquez's residence they were given permission to enter the residence by Vazquez's wife Evelyin. (EFC No, 550 at. 9, 42). Vazquez's wife pointed the officers to the room where Vazquez was present, before the officers made their way into the Room. (EFC no, 550 at. 10, 42). In abeyance to the Fifth Circuit mandates, an arrest warrant places officers in a lawful position to view the incriminating object-by authorizing their presence —and the search for the suspect in places where he might be hiding which establishes their lawful right to access it, they can seized it without a search warrant. United States v. Woods, 560 f.2d 660 (5ᵗʰ Cir. 1999). Here, the evidence reveals that Vazquez authorized the officers, and pointed them to where Vazquez was present. (EFC No. 550 at. 42).

When the agents entered Vazquez's bedroom, they found him standing beside his bed and wearing only a t-shirt and some shorts. They immediately handcuffed him, which render him incapable of reaching any objects in the bedroom to attempt to harm the agents or to affect his escape. Two of the agents immediately led him out of the bedroom and handed him over to two agents who were standing outside the bedroom door. The first two agents then re-entered his bedroom and, along with the third agent, conducted a search of the room, including night stands, the bed, all other furniture and the closet. The two agents outside the bedroom escorted Vazquez downstairs and out the front door, then took him to the area in front of his garage and required him to stand there, outside the closed garage, in public view of the passers-by. These and/or other agents remained with him for the next 45 minutes or so, while other agents searched the inside and outside of his home, including his vehicles.

The record of this case reveals that Vazquez was not asked for, and did not give the agents, consent to search his property. Agents went through every room, closet, cabinet, drawer and other parts of the home. Several times, the agents asked Mrs. Vazquez for consent to search the home, and on one occasion asked if they could bring police K-9. Mrs. Vazquez refused all these requests. There were approximately 8 agents in the home, and perhaps 6 outside the house.

4

When the agents concluded their searches—about 45 minutes after the initial entry—they departed the home. The agents did not inform Mrs. Vazquez that they had seized anything from the home and did not leave an inventory of such items. Once free to inspect her home after this intrusion, Mrs. Vazquez saw that the agents had disturbed things in every room, closet, cabinet, drawer and elsewhere in the house. It was evident the agents searched all the home. Several items were missing from the Master Bedroom, upstairs including an iPad, and iPod, and several mobile telephones along with two Samsung mobile phones, one iPhone 6, one Blackberry device and one HTC mobile telephone. Of these several items, the Blackberry and iPhone 6 were concealed within a closed night stand. The two Samsung mobile phones were found atop of the night stand.

The agents had only an arrest warrant, but no search warrant. They did not have consent from anyone at the home, and there were no exigent circumstances that would have allowed the 45-minute search of the home after Vazquez was arrested and removed from the house. The law is clear on this, it is permissible for police to search the person being arrested in order to remove any weapons that the person may use to harm the officers or to affect his scape. But "there is no comparable justification for routinely searching any room other than that in which the arrest occurs—or for a matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." The facts in this case clearly contradict the well stablished law mandates. The record reveal that several items that were confiscated at Vazquez' residence during his arrest from his bedroom were concealed within a closed night stand, including a non-operable Blackberry and a iPhone 6. The information that both of this item later revealed was critical in building a criminal case against Vazquez, such information established connection to the organization and revealed critical information that indeed added weight to his criminal prosecution and were essential in denying his suppression hearing.

On the same day on June 16, 2016, during the illegal search, a vehicle Make Porsche, Year 2010, Model Cayenne, Title No. WP1AD2AP8ALA60087 was found parked in the house garage. According to the agents, such vehicle was registered to Jose Roman (Vazquez's cousin). On the same day, officers expanded their delegated authority by searching both, the Porsche Cayenne vehicle and a 2013 Cadillac Escalade ESV, that was outside the residence in the driveway. Both vehicles

were searched and confiscated. Later during criminal proceedings information from the vehicles was used as evidence against Vazquez' criminal proceedings. No confiscation form mas ever presented to Vazquez during the arrest proceedings. In establishing connection between Vazquez and co-defendant Jose Roman, the government alleged that the vehicle Porsche Cayenne was registered to Jose Roman not to Omar Vazquez-Avendano. (St. at 12. Ln. 9-19). Not only misguiding was the fact that the government utilized such a tool against Vazquez, when in fact the title of such vehicle reflects being registered to Vazquez at all times ( See. Declaration by Omar Vazquez-Avendano Attached. **Exhibit A.** See also Certificate of Vehicle Title **Exhibit. B.**), but disclosure of evidence fruit of the illegal search was prejudicial towards adding weight to Vazquez's prosecution.

From examining the files in this case, it is clear that mush of the drug evidence that was seized by the Government was through the use of court-authorized GPS tracking and interceptions of telephone calls and text messages. That is, the Government investigation surrounded the court-warranted surveillance of multiple telephones and other such devices. The Government must have expected to encounter telephones and Blackberries at all homes at which arrests were made, and certainly have obtained warrants to search for such items along with other evidence at the time of the warranted arrests. Yet, the Government chose to waive such a procedure, clearly acting in violation of the 4th Amendment protections.

The facts of this case present the Court with three distinct issues: (1) whether the DEA officers' warrantless entry into the residence and subsequent "sweep" of Vazquez's residence, during which the officers searched and confiscated two vehicles, and the illegal search of Vazquez' bedroom drawer in which a Blackberry cell Phone device was found containing critical evidence against Vazquez was reasonable in light to an exception to the general requirement that officers obtain a warrant before entering a person's home, (2) if the officers' warrantless entry into the residence and their subsequent "sweep" of the residence was reasonable, whether the items seized during the subsequent search of the residence pursuant to the arrest warrant should have been suppressed, including any and all testimonial evidence fruit of the illegal search, and (3) whether attorney articulating Vazquez' motion to suppress failed to present the court with a complete detailed of all evidence that was fruit of the poisonous tree. In the case at hand, the Court must consider the facts of this case, and applicable law, further may conclude that the officers' initial entry into and "sweep" of Vazquez' residence pursuant to the search presented sufficient

grounds for suppression but for attorney's failure to articulate the proceedings properly and in a nuance manner. The Court must then determine whether, in light of all circumstances, the identified acts and omissions were outside the wide range of professional competent assistance. Id. <u>Strickland v. Washington</u>, 466 U.S. at. 690.

Unfortunately, under the circumstances of the case, the trial counsel was ineffective for failing to investigate the evidence that would have been introduced during the suppression hearing in order to undermine the credibility of executing Agent Gronewarld. Here counsel was fully informed that the Blackberry phone recovered during Vazquez's arrest had been out of service months prior to his arrest. Any reasonable counsel having this information would have conducted a reasonable investigation to determine a date on which the phone became inactive. This information was critical in building a plausible line of defense hereto demonstrate that not only the phone was inactive, but that was inside a drawer and stored, and that the drawer was not open as the government misrepresented the circumstances to the court. (EFC no. 550 at. 30).

In any event counsel's failure to present evidence showing that the evidence product of the Blackberry in question was illegally obtained and was prejudicial to Vazquez's case, also counsel should have clarified that the Blackberry became inactive a few months before the arrest, clearly such action could have changed the outcome of the proceedings, without a doubt upon proper objection such information could not have been used against Vazquez the way it was presented by the government. Here, government took full advantage of counsel's error and made the court take the wrong perception of the case. The evidence product of said Blackberry was decisive in denying Vazquez motion to suppress. Such information clearly contaminated the court's perception and added significant weight in favor of denying the suppression hearing. Here, clarifying to the court that Blackberry Phone was concealed in a drawer and had been inactive for months prior to Vazquez's arrest, would have indeed changed the court's view of the surroundings and circumstances of the case. The evidence talks by itself, where we have a Blackberry that had been out of service for months stored in a night stand drawer, on the other hand we have the active i-pad in plain view, a couple of phones on top of the night stand of which all were operational. Here, the court allowed evidence of an inactive Blackberry that was concealed in a night stand drawer to be used against Vazquez. The parameter of the circumstances would have been different upon clarifying the circumstances, it is very likely that the court would have reasoned the issue

differently but for counsel's error. Under the circumstances, it would have been clear for the court to conclude that Agent Gronewald's (Searching agent) had no lawful right of access to the Blackberry inside a closed drawer. <u>United States v. Waldrop,</u> 404 F.3d (5ᵗʰ Cir. 2005).

I.     **No Exception to the Warrant Requirement Justified the DEA Officers' Initial Warrantless Entry and Sweep" of the Residence.**

"It is 'basic principal of Fourth Amendment' that searches and seizures inside a home without a warrant are presumptively unreasonable." <u>*Payton v. New York,*</u> 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (*quoting* <u>*Coolidge v. New Hampshire,*</u> 403 U.S. 443, 477, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). "With few exceptions, the question of whether a warrantless search of a home is reasonable and hence constitutional must be answered no<u>*." Kyllo v. United States,*</u> 533 U.S. 27, 31, 121 S.Ct. 2031, 150 L.Ed.2d 94 (2001). Among those exceptions are situations in which (1) the police have probable cause that a crime is being committed in a home and there are exigent circumstances that justify a warrantless entry into the home, see <u>*Coolidge,*</u> 403 U.S at 468, 91 S.Ct. 2022; (2) the police reasonably believe that there is a "need to assist persons [inside a home] who are seriously injured or threatened with such injury<u>*," Brigham City v. Stuart,*</u> 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006); (3) the police have a "reasonable, articulable suspicion that [a home] harbors an individual posing a danger to those on the scene." <u>*United States v. Gould,*</u> 364 F.3d 578, 587 (5ᵗʰ Cir. 2004). Which permits the police, "without a warrant, to conduct a quick and limited search of [the] premises for the safety of the [officers] and others present at the scene,' <u>*United States v. Mendez,*</u> 431 F.3d 420, 428 (5ᵗʰ Cir. 2005); (4) a search is conducted incident to a lawful arrest but is limited to: Removing weapons and seize evidence to prevent its concealment or destruction, and may search the area "within the immediate control" of the person arrested meaning the area from which he might gain possession of a weapon or destructible evidence. See. <u>*Chimel v. California,*</u> 395 U.S. 762-63 89 S.Ct. 2034. 23 L.Ed 685 (1969). For the routine search of rooms other than in which an arrest occurs, or for searching desk drawers or other closed or concealed areas in that room itself, absent well-recognized exception a search warrant is required. Id. at 763.                8

Blackberry and iPhone 6 were concealed within a closed night stand in Vazquez' bedroom, the *Chimel v. California* principals were clearly present and ruled in favor of Vazquez. However, it was clear from the record that absent proper objection by Vazquez' attorney, the District Court erroneously allowed the use of evidence fruit of the poisonous tree against him during his criminal proceedings. This deprivation of his substantial rights also violated his Due Process rights resulting in a complete fundamental miscarriage of justice. In the present case, allowing illegal obtained evidence in favor of the prosecution was beyond the authority of Court, because it was against express provision of the Fourth, Fifth and Sixth Amendment constitutional rights.

**Voluntary, Knowingly, and Intelligently Plea Agreement.**

Acceptance of the petitioner's guilty plea under the circumstances of this case constituted error. The Fifth Circuit has held that counsel, indeed, has a duty to advise a defendant of the options and possible consequences of entering a plea of guilty or going to trial. Beckharm v. Wainwrit, 639 F.2d 262, 267 (5th Cir. 1981). A review of the record in the instant case shows that Vazquez entered culpability in large part based on the evidence that was obtained in his residence during his arrest. Here, Vazquez's counsel advised him to enter a plea agreement blindly, in spite of violations to his Fourth, Fifth, and Sixth Amendment constitutional rights.

A guilty plea waives important constitutional rights and thus is only valid if entered "voluntary, Knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." Hanson v. Phillips, 442 F.3d 789, 798 (2d Cir. 2006) (quoting Bradshaw v. Stumpf, 454 U.S. 175, 183, 125 S.Ct 2398, 162 L.Ed.2d 143 (2005). To satisfy due process, [a] guilty plea must be 'voluntary, and intelligent choice among the alternative courses of action open to the defendant." Wilson v. Mcginnis, 413 F.3d 196, 198-99 (2d Cir. 2005) (quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct 160, 27 L.Ed.2d 162 (1970)). A plea is "intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced." Parke v. Raley, 506 U.S. 20, 20 113 S.Ct 517, 121 L.Ed 391 (1992)). Where as here, Vazquez was represented by counsel during the plea process and entered his plea upon the advice of counsel, the voluntariness of the plea depends on whether his counsel's advice 'was within the range of competence demanded of attorneys in criminal cases." Hill v. Lackhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.3d.2d 203

9

(1985) (citing <u>McMann v. Richardson</u>, 397 U.S. 759 (1970)). In determining whether a plea meets the requisites of due process, courts examine "the totality of the relevant circumstances.' <u>Gevais v. United States</u>, 08-CV-22. 2008 U.S. Dist. LEXUS 36766, at * 14 (E.D.N.Y. May 5, 2008).

Vazquez should prevail under this claim, because his attorney failed to properly suppress all evidence fruit of an illegal search, product of his arrest which was later used as leverage against him in order to coerce him into entering his plea agreement. The illegal use and misguiding information presented by the government (Theory that Vehicle Porsche Cayenne was Under Jose Roma's Name) was prejudicial and contaminating. Such information was presented in order to establish connection among co-defendant Jose Roman and Vazquez. The theory that such vehicle was registered under Jose Roman's name was only part of a strategical plan from the government for the sole purpose of making the court misperceive the facts against Vazquez's case. The truth of the matter is that vehicle was at all times registered under Vazquez's name. **See <u>Exhibit B</u>**. But for counsel's error in failing to investigate history of vehicle and clarify the actual facts, the court ruled against Vazquez. In the case at hand, both, the illegal obtained and use of evidence fruit of the Blackberry cell phone, and the theory that vehicle Porsche Cayenne was under Jose Roman's name were part of an illegal search. Attorney's failure to raise the proper defense pursuant to violations to Vazquez's Fourth, Fifth and Sixth Amendment clearly prejudiced him. Vazquez should prevail based on this argument because absent the present violations, no overwhelming evidence existed to establish culpability against him. Vazquez could have taken his case to trial absent the above evidence. Vazquez's trial counsel deprived him from obtaining a fair and fruitful due process in his criminal proceedings. Vazquez should prevail based on this argument. Here, the court may vacate his conviction and weight if sufficient overwhelming evidence existed for prosecution.

**B. Whether Counsel Rendered Ineffective Assistance by failing to present the Supreme Court mandates of <u>Alleyne v. United States</u>, 133 S.Ct. 2251 in respect to drug amounts and currency attributable to Vazquez-Avendano**

In the case at hand, judicial fact finding that increased Vazquez's mandatory minimum sentence was not permitted under the Sixth Amendment. In 2013, the Supreme Court issued *Alleyne v. United States*, 133 S.Ct 22151, 186 L.Ed.2d 314

(2013)( The Supreme Court in Alleyne issued that any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt.). The Alleyne's court overruled the rendering of _Harris v. United States_, 536 U.S. 545 (2002), which held that "judicial factfinding that increases that mandatory minimum sentences was permissible under the Sixth Amendment. The touchstone for determining whether fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an "element" or "ingredient" of the charged offense.

The drug and currency calculus in Vazquez's case were clearly exposed through his Presentence Investigation Report (PSR). According to PSR (PSR at 95), Omar Vazquez' role in the instant offense was that a narcotics distributor, who had numerous operatives, Jose Roman, Rodrigo Roman, Moises Ramos, Jesus Cepeda, and Abel Cadena, under his direction. However, for the purposes of calculating his sentence, the court adopted PSR's recommendation and held Vazquez accountable for the seizures that occurred on November 9, 2015 (.510 Kilograms of cocaine; $163,543 in U.S. currency), on March 5, 2016 (.487 Kilograms of heroin; 10.72 Kilograms of cocaine; $304,370 in U.S. currency) and on June 13, 2016 (120 Kilograms of cocaine; $436.120 in U.S. currency) for a total of 131.23 kilograms of cocaine .487 kilograms of heroin, and $904.033 in U.S. currency. Id. PSR at 95.

Although the elements that must be proved to convict Vazquez-Avendano for conspiracy, differ from those necessary to convict him for the alleged drug quantities, the deficiencies in the record preclude the use of the above-mentioned drug quantities in absence of making findings beyond a reasonable doubt. The question to be addressed in this case is whether drug quantity constitutes an "element" or "ingredient" of the charged offense.

Here, the overall conspiracy involves 5 kilograms or more of cocaine. 21 U.S.C 841(b)(1)(A) mandated for mandatory minimum of 10-years and maximum of life imprisonment. Vazquez entered a plea agreement that obviously rendered his culpability to the crime charged, yet, during sentencing the court accounted and adopted his PSR in rendering his sentence. This without making proper findings of whether the government had clearly established by presenting sufficient evidence beyond a reasonable doubt to support Vazquez's accountability to any of the drug quantities above 5-kilograms. 5-kilograms triggers Vazquez's mandatory minimum. From 5-to-15 kilograms of cocaine, the U.S.S.G mandate for the same punishment,

11

the same mandatory minimum. Any thing above those quantities is no longer a sentencing factor, but an element that must be submitted to a jury and found beyond a reasonable doubt. Here, Vazquez invokes the newly recognized constitutional right exception in *Alleyne v. United States*, 133 S.Ct 2151 (2013). Vazquez presents that under Alleyne's change of law his plea agreement and sentence is illegal. That the Court had no authority to sentence him to any number of drugs in excess of what the indictment and plea agreement stipulates. The rendering of Alleyne circumscribes any previous discretion, restricting judges from the authority to sentence a person to drug amounts not found by a jury beyond a reasonable doubt, or pled by the defendant. At the same time provides a defendant the bulwark during sentencing. *Blakely v. Washington*, 542 U.S. 296, 304, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (holding that "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority" (citations omitted)).

In determining sentencing scheme: They are constitutionally infirm if they mandate enhanced punishments based on facts found only by a judge by a preponderance of the evidence. By restoring the principles outlined in landmark cases such as *In re Winship*, 397 U.S. 358, 90. S.Ct. 1068, 25 L.Ed.2d 368 (1970), Alleyne and its progeny fundamentally changes the landscape of modern sentencing law, and in so doing paved the way for Booker.

The United States v. Booker, 543 U.S. 220 (2005) Court considered whether the Sentencing Reform Act's mandatory determination sentencing scheme infringed the jury-trial right. In the first of two opinions, the Supreme Court held that the two applications of the Guidelines before the Court violated the Sixth Amendment because the sentencing judge in each case imposed a more severe sentence than the facts found by the jury warranted. 543 U.S., at 235, 125 S.Ct. 738. The Court recognized that if the Guidelines "could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response of differing sets of facts, their use would not implicate the Sixth Amendment." Id., at 233, 125 S.Ct 738. But the Court rejected such an advisory reading of the Guidelines. As they then stood. Id. at 234, 123 S.Ct. 738. To satisfy constitutional guaranties, the Court explained that any fact that has the effect of increasing the mandatory minimum range must be "established by a plea a of guilty

or...must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id.., at 244, 125 S.Ct. 738. Otherwise, the sentence would violate the Sixth (and the Fifth) Amendment.

In essence of Alleyne, also in absence of factfinding or absence of Vazquez admitting during the plea agreement, failing to establish specific drug amounts attributable to him during sentencing, Vazquez maintains that his plea agreement and sentence violate his Sixth (and Fifth) Amendment rights.

### C. Whether Counsel Rendered Ineffective Assistance by Failing to Object Properly to the Misaplication of the Guidelines Under Section 2D1.1(b)(1).

Vazquez urges that his counsel failed to properly raise an objection to a district court's error by enhancing his offense level pursuant to U.S.C.G 2D.1.1 (b)(1) based on his coconspirator's alleged possession of firearm in furtherance of the conspiracy. Vazquez contends that the district court misapplied the Guidelines by making a general presumption that firearms are "tools" of the trade" and that it is always foreseeable that they will be used during criminal drug activity. Vazquez urges that he showed that it was clearly improbable that the firearm found were connected to his participation in the offense or connected to the drug offense.

In the case at hand, Vazquez rebutted the evidence presented by the Government that overcame the inference of foreseeability and, thus, he showed that it was clearly improbable that the firearm found could have been attributable to his participation in the conspiracy or the drug offense.

The Government had the initial burden to show by the preponderance of the evidence that Vazquez's coconspirator possessed the firearm to be used in the evidence with drug trafficking and that Vazquez could have foreseen that possession and use. See United States v. Zapata-Lara, 615 F3d 388, 390 (5ᵗʰ Cir. 2010). The conclusory argument by the Government to enhance Vazquez's sentence raises the inference of foreseeability where there are drugs and guns, if that inference is rebutted, there must be a preponderance of the evidence to support this fact finding. See. United States v. Burke, 888 F.2d 862 (D.C. Cir. 1989) ("[I]nsofar as Section 2D1.1(b)... would enhance the defendant's sentence, the burden of proof is on the

prosecution to satisfy the factual prerequisite of the provision" by a preponderance of the evidence.). Although here, the Government made showing that coconspirator Rodrigo Roman possessed weapons and ammunition in his residence where agents discovered $48,000 in currency along with 4.72 kilograms of cocaine found concealed in a vehicle parked on Rodrigo's property, the Government failed to stablish that Vazquez have foreseen that possession and use of the weapons as part of the drug trade. Government's investigation at most provided that the Roman brothers were part of not one, but more than one conspiracy involving cocaine and other drugs. The district court here in making its determination, relied on evidence that could have been from a different case or conspiracy, and that had no connection to Vazquez, or that Vazquez had foreseen. Where, as here, the court made determinations solely on a presumption that the weapons were connected to Vazquez, or to his case.

When making findings at the sentencing stage, a district court may consider any information that "bears sufficient indicia of reliability to support its probable accuracy." United States v. Zuniga, 720 F.3d 587, 590-91 (5ᵗʰ Cir. 2013). However, a district court's factual finding may represent clearly erroneous in absence of plausible or in light of the record as a whole. United States v. Alaniz, 726 F.3d 586, 622 (5ᵗʰ Cir. 2012). The district court may adopt facts contained in a PSR without further inquiry assuming those facts have an adequate evidentiary basis that itself is sufficient reliable and the defendant does not present evidence to the contrary. *United States v. Harris*,702 F.3d 226, 230 (5ᵗʰ Cir. 2012). Where a defendant wishes to challenge sufficiently reliable facts contained in a PSR, the defendant carries the burden of presenting rebuttal evidence showing that those facts are materially untrue.

In the case at hand, Vazquez's attorney simply ignored the fact that the weapons recovered at Rodrigo Roman's residence were non foreseeable to him. Vazquez's attorney could have presented rebuttal evidence showing that those facts that the court accounted in determining his sentence were materially untrue, inaccurate, or unreliable. Attorney could have objected by quoting the record of the same criminal case. On the other hand, Vazquez's counsel simply opted for waiving proper objections. In United States v. Rodriguez, 602 F.3d 346, 363 (5ᵗʰ Cir. 2010) (the court held that because no testimony or other evidence was submitted to rebut the information in the PSR, the district court was free to adopt the PSR's finding without further inquiry or explanation."). The district court adopted the PSR, which aside

from proper objection caused the court to assume that weapons were connected to Vazquez's case. Counsel did not contradict or impeach the PSR, which allowed the court to enhance Vazquez's sentence by 2-levels in his sentence.

Vazquez should prevail on this argument and the court may vacate his sentence and deduct the two additional levels from his sentence as they were unsuitable in his case.

### D. Whether Counsel Rendered Ineffective Assistance by Failing to Object to the Misapplication of the Guidelines Under Section 3B1.1(b)

The Guideline provide for a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G 3B1.1(a). "The terms 'organizer' and 'leader' are to be broadly interpreted. Although an individual in a drug conspiracy must do more than sell drugs for resale in order to be deemed an organizer or leader, he need not directly control his co-conspirators." *United States v. Thompson,* 210 F.3d 855, 861 (8th Cir. 2000) (quotation omitted), cert. denied, 532 U.S. 996 (2001). "Factors the court should consider include the exercise of decision-making authority...the recruitment of accomplices...and the degree of control and authority exercised over others." U.S.S.G 3B1.1, comment. (n.4).

In assessing Vazquez's role in the offense, the Court adopted PSR without addressing whether sufficient and foreseeable evidence was presented by the government to support this fact finding. According to Probation Report (PSR at. 95), role in the instant offence was that of a narcotics distributer, who had numerous operatives, Jose Roman, Rodrigo Roman, Moises Ramos, Jesus Cepeda, and Abel Cadenas under his direction. Omar Vazquez, who is viewed as an organizer in this conspiracy was assumed to be responsible for coordinating the receipt of the cocaine shipments from the Rio Grande Valley, Texas area to the Chicago, Illinois area. According to PSR, he appeared to have been involved with the MLDTO for over a year or more as he worked closely together with Ismael Lechuga in order to receive the cocaine shipments and thereafter sell and distribute the same. Id.

For purposes of this case, his participation in the aforementioned illicit activity was limited to the cocaine seizures that occurred on November 9, 2015 (.510 kilograms of cocaine; $163,543 in U.S. currency), on March 5, 2016 (.487 kilograms of heroin;

10.72 kilograms of cocaine; $304,370 in U.S. currency) and June 13, 2016 (120 kilograms of cocaine; $436,120 in U.S. currency), for a total of 131,23 kilograms of cocaine, .487 kilograms of heroin, and $904,033 in U.S. currency.

This conclusory presentation of the facts absent proper objection by Vazquez's counsel allowed the court to increase his sentence for an aggravated role in the offense. In this case, the court deviated for the fact that in enhancing a sentence for an aggravating role in the offence pursuant to Section 3B1.1(b), the burden of proof is on the prosecution to satisfy the factual prerequisite of the provision, by a "preponderance of the evidence." In *United States v. Burke*, 888 F2d 862 (D.C. Cir. 1989), the D.C. Circuit Court determined that in enhancing a sentence pursuant to Section 2D1.1(d)... the burden of proof is on the prosecution to satisfy the factual prerequisites of the provision, by a preponderance of the evidence. Id. Vazquez here, raises that the district court erred in assessing the aggravating-role enhancement under U.S.S.G. 3B1.1(b). Specifically, he presents that the evidence was insufficient to support the enhancement because it was not clear what criminal undertaking co-defendants (or people mentioned in the PSR) performed under the recruitment and direction of Vazquez. "Whether a defendant exercised an aggravating role as an organizer, leader, manager, or supervisor for purposes of an adjustment under U.S.S.G. 3B1.1(b) is a finding of fact review for clear error." *United States v. Ochoa-Gomez*, 777 F.3d 278, 281 (5th Cir. 2015). "A defendant's role in the criminal activity for the criminal activity for the purpose of applying 3B1.1(b) may be deduced inferentially from available facts." United States v. Ayala, 47 F.3d 688, 690 (5th Cir. 1995).

The PSR in Vazquez's case, lacked facts supporting a determination that he recruited any of the people mentioned in said document to be an accomplice in his methamphetamine-trafficking scheme and planned and organized the criminal operation. See U.S.S.G 3B1.1 cmt. n.4 (noting that the defendant's "recruitment of accomplices" and "degree of participation in planning or organizing the offense' are factors courts should consider when determining application of the enhancement). Here, the district court's application of the 3B1.1 enhancement was procedurally improper because the court relied exclusively on the PSR to resolve the issue and failed to explain its reasons for overruling Vazquez's objection to the enhancement and determined Vazquez's Guidelines range by having an off-the-record discussion with probation officer. 16

Although Vazquez recognizes that a presentence report generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations. See *United States v. Nova*, 624 F.3d 226, 231 (5th Cir. 2010). Vazquez also recognizes that he bears the burden of presenting evidence to show that the facts contained in the PSR are inaccurate or materially untrue. See United *States v. Alaniz*, 726 F.3d 589, 619 (5th Cir. 2013). However, only in the absence of rebuttal evidence a sentencing court may properly rely on the PSR and adopt the PSR'S factual findings.

Here, Vazquez presents the following facts in establishing that the court err in enhancing his sentence for an aggravating role in the offense. According to the Presentence Report (PSR. at. 95), Vazquez in the instant offense had numerous operatives, Jose Roman, Rodrigo Roman, Moises Ramos, Jesus Cepeda, and Abel Cadena.

Applying the adjustment turns, first, on the size and scope of the criminal activity ("five or more participants or otherwise extensive"). Id. U.S.S.G 3B1.1.

In the case at hand, the above names constitute the "five or more participants" in which the court relied in assessing the enhancement. Now, Vazquez exposes the misapplication of the enhancement by exhibiting that the record speaks for itself. In early 2015, an intestate narcotics-related investigation was initiated in McAllen, Texas. (PSR. At 41.).

The record of this case clearly reveals that Ismael Lechuga was the leader and organizer of the instant narcotics trafficking organization. (PSR. At 88.). Ismael Lechuga had his own subordinates/operatives who he directed to carry out the functions of his operations (transportation and stash house coordinators, transporters/load drivers, stash house caretakers, and counter-surveillance escorts). Ismael Lechuga worked closely with Marco Benavides, who was his right hand. (PSR. At. 88). The plain language of U.S.S.G 3B1.1 mandate for "five of more participants or other ways an extensive number of people under Vazquez's command in order for the enhancement to be satisfied.

Here the district court must conduct an individual assessment of each of the five participant and must establish in what manner was this participant recruited by Vazquez or was coordinated, or otherwise supervised or managed.

1. The ***Roman Brothers***. (***Jose Roman, and Rodrigo Roman***). Assuming that

Vazquez sold drugs to the Roman brothers during the conspiracy. Individuals in a drug conspiracy must do more than sell drugs for resale in order to be deemed an organizer of leader. In a conclusory manner during sentencing, the court exposed that it only takes one subordinate to be a supervisor, it only takes one person under whom you direct, you know, a driver to unload at a certain location, someone to secure a warehouse. (See St. Tr. Pg. 10. Ln. 11-14.). Vazquez disagrees on this point, as the plain language of U.S.S.G 3B1.1 is clear, the court must assess individually the existence of five persons that by chain of command were Vazquez's subordinates. Although, Vazquez need not directly control his co-conspirators, the existence of sufficient and foreseeable evidence must establish clear connection for the enhancement. In establishing lidership of Vazquez to the Roman brothers, the court instead at most was presented with family connection, in the sense that the Roman brothers were described as uncle and cousin, or both cousins. (See. St. Pg. 11. at. Ln. 13-17). In terms of documents the court was exposed that the house in which Vazquez lived had been purchased initially in the name of Rodrigo Roman because Vazques did not have the kind of credit, however, Vazquez was paying for it. (See St. Pg. 11. at. 19-25). No evidence of any communication was ever presented between Vazquez and Rodrigo Roman. Furthermore, no evidence was ever presented in establishing Vazquez leading or recruiting Rodrigo Roman. As to Jose Roman, during Vazquez's arrest on June 16, 2016, federal agents working for the DEA uncovered the existence of a vehicle Porsche Cayenne, Year 2010 (Vin No. WP1AD2AP8ALA60087) found at Vazquez's garage. According to what was presented during Vazquez's sentencing, such vehicle was registered to Jose Roman. The court assumed that because such vehicle was registered under Jose Roman's name, such fact established relationship between Vazquez and Jose Roman. Contradicting is the fact that that vehicle was at no time registered to Jose Roman, but to Omar A. Vazquez. *See. Certificate of Title of a Vehicle Exhibit B.* Absent attorney's objection, such misperception clearly prejudiced the outcome of the proceedings. (St. Pg. 12. Ln. 14-19). During sentencing it was alleged that at one point in time Rodrigo Roman and Jose Roman had identified Omar Vazquez as being their boss in terms of the earlier statements the they gave. No evidence was ever presented to support such allegation. However now, Vazquez introduces Jose Roman's Affidavit stating the actual facts of the matter. Throughout Jose Roma's affidavit he explains that both him and his brothers were independent and although his brother and him shared the same source of

supply with Vazquez (Mr. Lechuga), Vazquez at no time served as coordinator, organizer or recruiter to them, neither at no time during their arrest they made any statement identifying Vazquez as their boss. *See Affidavit of Jose Roman Exhibit C.* In terms of relationship, the Roman brothers have always maintained a good relationship with Vazquez being that they are family. Prior to Vazquez entering his plea agreement Both Roman Brothers had agreed to testify to this if Vazquez was to exercise trial by jury. The Court was presented with false information and absent proper objection by Vazquez's attorney the Court made its ruling based on inaccurate facts and misperception.

The Court's finding that Vazquez was the Roman's brother's coordinator, organizer or otherwise recruiter was clearly erroneous, considering the record as a whole. The Court's application of Section 3B1.1(b), (c) was otherwise in error. The Roman brothers may not be accounted as two of the five or more participants required for the aggravating role in the offense enhancement.

2. *Jose Roman and Moises Ramos.* On March 5, 2016 Chicago HIS agents established surveillance in the vicinity of 4133 North Marmora, Chicago Illinois, a residence where the GPS ping for Jose Roman was stationary. At said residence, which was located on 1216 North 33rd Street, Jose Raman entered a green Ford Explorer and departed the property, traveling to another residence located at 1342 Grove Avenue in Berwying, Illinois. Jose Roman entered the garage of the second residence, where he was met by Moises Ramos. As Chicago HIS agents approached the garage, they observed Moises Ramos removing a black and blue duffel bag from the rear passenger area of the green Ford Explorer. Upon noticing the Chicago HIS agents entered the garage, Jose Roman and Moises Ramos attempted to abscond; however, shortly thereafter, they were apprehended. Chicago HIS agents retrieved said duffel bag and discovered the same contained 6 packages of cocaine with a gross weight of approximately 6 kilograms. Jose Roman and Moises Ramos were then read their Miranda Rights which they elected to waive, both agreeing to provide post-Miranda statements in the absence of an attorney. (PSR. At 49.). Moises Ramos revealed that he met Jose Raman at a bar approximately year prior (in 2015) and briefly thereafter began working for him. Moises Ramos disclosed that on two separate occasions, Jose Roman had provided him with bags containing multiple kilograms of cocaine. Moises

Ramos would wait for Jose Roman's instructions regarding how to proceed with the cocaine. At times, Jose Roman would ask Moises Ramos to divide the packages of cocaine into smaller increments. (PSR. At 54).

It is clear by the record, that Moises Ramos worked under Jose Roman's orders and not under Vazquez's coordination, supervision or recruitment. Because Rodrigo Roman and Jose Roman were independent in the conspiracy, the chain of command does not link Vazquez to Moises Ramos. Moises Ramos may not be accounted as one of the five or more participants as required by U.S.S.C 3B1.1 (b),(c).

3. *Jesus Cepeda and Abel Cadena.* Their role in the instant offense was that of a narcotics transportation and stash coordination. They were tasked with coordinating the temporary storage and transportation of the narcotics upon their arrival to Chicago, Illinois area, from Rio Grande Valley, Texas area. Count Five of the Superseding Indictment charge that on June of 2016, 120 kilograms of cocaine arrived in the Chicago area. The Roman brothers were co-equals to Vazquez. They obtained the drugs from Lechuga ones shipped to Chicago where the drugs were split up. On June 2016, Jesus Cepeda accompanied by Abel Cadena picked up 60 of the 120 kilograms of cocaine and transported them to his residence for temporary storage. (PSR. At 101). Out from that 120 kilos, only 20 percent of that, one-fifth of that, was going to Omar Vazquez. The government with the debriefings, from evidence, was fully aware that only 24 kilos out of the 120 was going to Omar Vazquez, and that he had no interest in other quantity at all on the 96 kilos that were left. (See. St. Pg. 8. Ln. 5-10). The court during sentencing acknowledged that the 120 kilograms were part of a mixed load based on the different imprints on the cocaine. The court also recognized that all cocaine came from Lechuga. Here the record speaks for itself, Omar took 24 kilograms out of the 120, Jesus Cepeda and Abel Cadena took 60 kilograms out of the 120. According to the record of this case, the implication of millions of text messages may well address the fact that no text messages were ever presented by the Government between Omar Vazquez to Jesus Cepeda or Abel Cadena during this event, or during the conspiracy. In addition, Vazquez presents now Affidavit of Jesus Cepeda Cano (*See. Affidavit of Jesus Cepeda Cano Exhibit D.*). Jesus Cepeda Cano throughout his affidavit under oath, exposes that him and Vazquez had no connection in the conspiracy, and that he at no time served

20

him in any way. Jesus Cepeda Cano and Abel Cadena neither directly or indirectly worked for Vazquez, in fact the record of this case may well and clearly expose that neither Jesus Cepeda Cano nor Abel Cadena were part of Vazquez's circle. They did not know each other which is very telling in this court.

Specifically, Vazquez urges that the evidence to support "five or more participants or otherwise extensive" was insufficient to support the enhancement, because it was not clear what criminal undertaking any of the people that were accounted for the enhancement performed under the recruitment and direction of Vazquez. "Whether a defendant exercised an aggravating role as an organizer, leader, manager, or supervisor for purposes of an adjustment under U.S.S.G 3B1.1(b),(c) is a finding of fact review for purposes of an adjustment under U.S.S.G 3B1.1(b)(c), and is a finding of fact reviewed for clear error." <u>United States v. Ochoa-Gomez</u>, 777 F.3d 278, 281 (5th Cir. 2015). "A defendant's role in the criminal activity for the purpose of applying Section 3B1.1 may be deduced inferentially from available facts." <u>United States v. Ayala</u>, 47 F.3d 688, 690 (5th Cir. 1995). Here, Vazquez presents clear and sufficient facts in the form of "Certificate of Title of a Vehicle Porsche Cayenne 2010, Affidavit of Jose Roman, co-defendant and a defendant accounted as being one of the five recruits, Affidavit of Jesus Cepeda, co-defendant and one of the five recruits accounted for assessing the aggravating role in Vazquez's sentence. Both affiants are and were willing to testify in the event that Vasquez exercised trial in this case. The enhancement in this case is inapt, as the district court's findings were plausible not base on the entire record, and, therefore, the findings were clearly erroneous. The court must vacate Vazquez's sentence and correct court's error. Also, the court may determine that Vazquez's attorney rendered ineffective assistance by not presenting a proper objection exposing available affidavits and substantive evidence in support.

### *THE SAFETY VALVE*

Because Vazquez's aggravated role in the offense is inapt, the safety valve applies to his sentence. In addition, Vazquez did not personally possess the weapons, therefore he would still be eligible for the safety valve. In the case at hand, it was Rodrigo Roman who had the weapons, and not Vazquez. In the case of Jose Roman, during sentencing the court fount appropriate assessment and ruled that even when his brother Rodrigo Roman possessed the weapons and was part of the same

conspiracy, such fact did not disqualify Jose Roman for the safety valve. Here, under the equal protection right, Vazquez should not be treated differently than Jose Roman, being that both are part of the same conspiracy, and are similarly situated. The Supreme Court has said that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." Here, a longer sentence would unjustifiably subject Vazquez to harsher treatment than similarly situated defendants (Jose Roman) in the district court. Here, Vazquez's above-Guidelines sentence would create a disparity "among a defendant with similar record who have been found guilty of similar conduct," and that such a disparity would be unwarranted. United States v. Durham, 645 F.3d 883, 897 (7th Cir. 2011). Vazquez identifies Jose Roman who has similar record, was found guilty of similar conduct and in comparative he was granted a two-level departure for the safety valve.

Vazquez was held responsible for the relevant conduct identified in the Presentence Report and found a correctly score after granting off the third acceptance of responsibility point leaving Vazquez at a level 35, Criminal History Category I, which is a range of 168 to 210 months. The court committed Vazquez to the custody of the Bureau of Prisons to be imprisoned for a term of 196 months. However, the safety valve may deduct additionally 2-levels from the 35, which exposes Vazquez to a level 33, Criminal History Category I, resulting in a range of 135-168 months.

Because the only obstacle depriving Vazquez from being entitle to a downward departure pursuant to the safety valve was his aggravated role as a leadership, and he by presenting substantial evidence has established that the enhancement is not properly imposed, now the court may re-evaluate his sentence and grant a two-level decrease pursuant to the safety valve.

### E. Whether Appeal Counsel Rendered Ineffective Assistance By Not Raising Arguments That Were Properly Preserved.

A criminal defendant has a constitutional right to the effective assistance of cous el at both, trial and appeal stage. U.S.Const. Amend. VI, XIV. See. Evitts v. Lucey, 469 U.S. 387, 393-95, 105 S.Ct 830, 83 L.Ed. 2d 821 (1985). Where as here, Appeal counsel was well aware that the sentencing counsel had properly preserved meritorious issues on the firearm enhancement, and

drug quantity. Court's conclusion that the firearm is a tool of the trade without nexus to Vazquez, was clearly an abuse of discretion. As discussed previously, the court need to do a specific finding on the nexus between the firearms, cocaine and Vazquez.

During sentencing hearing, the government was not able to show nexus between the firearms of co-defendant, the drugs and Vazquez by presentencing convincing evidence. The record as presented, did not clearly demonstrate that Vazquez would have foreseen that Rodrigo Roman possessed a fire arm during the commission of a crime. Furthermore, the government failed to introduce any statement by Rodrigo Roman demonstrating that Vazquez knew or should have known that he possessed a firearm. Hence, it is not clear that the issue was non-meritorious, especially when considering the district court came short from exhibiting specific finding on the firearm of a co-conspirator and Vazquez.

The sentencing lawyer properly preserved the question of drug quantity attributed to Vazquez. The Fifth Circuit has limited the defendant's liability to the quantity of drugs which he was directly involved or that was reasonably foreseeable to him. The court further concluded that the defendant was accountable for the quantity of drugs, which is attributable to the conspiracy, however, that is reasonably foreseen to Vazquez. United States v. Haines, 803 F.3d 213 (5th Cir. 2015). According to the record of this case, the district court clearly failed to make two separate findings as required by the Fifth Circuit.

Appeal attorney rendered ineffective assistance of counsel by not pursuing well preserved meritorious argument during sentence.

## F. Plea Agreement Was Entered Improvidently Caused of Comulative Ineffective Assistance of Counsel Errors.

A defendant in a criminal case is entitled to effective assistance of counsel during plea negotiations. Lafler v. Cooper, 566 U.S. 162, 132 S.Ct. 182 L.Ed.2d 389 (2012). After a criminal defendant pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdiction issues. United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003), cert. den'd 540 U.S. 1149, 124 S,\.Ct. 1146, 157 L.Ed.2d 1042 (2004).

Now, Vazquez challenges the constitutional effectiveness of the assistance he received from his attorney in recommending him to enter his guilty plea. See. United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986). In this context the Supreme Court has noted that despite the fact that "solemn declaration in open court carry a strong presumption of verity," formidable barrier in any subsequent collateral proceeding, See. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). The Sixth Amendment right to counsel does include affective representation during the plea negotiation process. See. Padilla v. Kentucky, 559 U.S. at 373.

A "critical obligation of counsel [is] to advise the client of the advantages and disadvantages of plea agreement." Id. Padilla., 559 U.S. at 370. (quoting Librelti v. U.S, 516 U.S. 29 (1995)). As part of this obligation an attorney has a duty to advise a defendant, who is considering a guilty plea, of favorable options and possible sentencing consequences. Brady v. United States, 397 U.S. 742, 756 (1970). The law requires counsel to research the relevant law and facts and to make decisions regarding the fruitfulness of various avenues. See. United States v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004).

In the case at hand, Vazquez proceed to enter into a plea guilty based in his counsel's advice. (See Mov. Decl. at 5. Exhibit A.). Unfortunately, at the time of re-arraignment hearing, Vazquez had no knowledge that counsel has misrepresented information relating the facts, circumstances, pleadings and law involved in his case. Hence, counsel's overall opinion of the case was flawed. In an event Vazquez had the belief of receiving reasonable opinion based on reasonable investigation of the facts and law of the case. If Vazquez had been provided with the correct guide and representation, his approach to the entire criminal proceeding would have been different. Consistent with the Supreme Court decision on Hill v. Lackhart, 474 U.S. 52, 88 L.Ed.2d 203 (1985), the voluntariness of a plea agreement depends on whether the advice was within the range of competence demanded of attorneys in criminal cases.

Here, after motion to suppress was denied, Vazquez's attorney affirmatively advised him to enter his plea agreement since there was nothing he could do, and if he was to proceed to trial, the possibilities of him receiving a life sentence upon conviction was extremely elevated. According to Counsel in this case, the existence of connection between him and the Roman brothers made his case overwhelming against him. The law is clear on this point, defense counsel must only conduct a

24

pretrial investigation that is reasonable under the circumstances. See. Futch v. Dugger, 874 F.2d 1483, 1486 (11ᵗʰ Cir. 1989). The reasonableness of the investigation is determined by the information conveyed to counsel by his client, as well as other information in his possession. In the instant case, Vazquez had provided his counsel sufficient information disputing the alleged incident of coordinating drug trafficking as charged in the instant conspiracy. **(See. Mov. Decl. at 3. Exhibit A.).** In providing this information, Vazquez disputed any facts that allude to his participation directly to any events that the government alleged he was involved on. Here, counsel was well informed on the charges against Vazquez. Counsel was fully informed that the charges originated directly with the seizure from the Roman brothers and Cepeda's illegal enterprise. Counsel was well aware that Vazquez clearly disputed any relation or involvement with said individuals.

Hence, a simple interview with Jose Roman and Jesus Cepeda, would have led counsel to discover that Vazquez was telling the truth. According to the sworn statement by Jesus Cepeda, he has never known Vazquez before his arrest **(See Affidavit. At 1-2. Exhibit D.**), and at no time was instructed or worked under the directions of Vazquez. Jesus Cepeda affirmed that the seized cocaine worth of 60 kilograms was never intended to be distributed partially or wholesome to anyone named Omar Vazquez-Avendano. Id. Another interview by Jose Roman would have further revealed that the two seizures against the brothers were neither coordinated, organized or even known by Vazquez. **(See. Affidavit. Exhibit C.).**

On the other hand, we have the fact that co-conspirator Ismael Lechuga, was identified as a confidential informant. As a matter of precedent, the Fifth Circuit has repeatedly affirmed that a defendant cannot conspire with a [g]overnment's agent. See. United States v. Maria Aide Delgado, 631 F.3d (5ᵗʰ Cir. 2011). From government's evidence, counsel was well informed that the prosecutor's case against Vazquez was based on paid informer. As stated earlier for Vazquez to maintain the charge of conspiracy, it required an agreement between two or more persons. See 21 U.S.C 846. Well known is the fact that a person cannot conspire with a government informer who secretly intends to frustrate the conspiracy. See. United States v. Richardson, 764 F.3d 1514, 1529 (11ᵗʰ Cir. ), cert. denied 474 U.S. 952, 106 S.Ct 320, 88 L.Ed.2 303 (1985); Sears v. United States, 343 F.2d 139, 142 (5ᵗʰ Cir. 1965).

The Fifth Circuit ruling in Sears case, ruled that an "agreement' with the government agent does not share the accused's criminal purpose. Id. at 139, 142. As

in Sears, in the instant case, no evidence existed that Vazquez ever had any contact with [his alleged co-conspirators] or that he even knew they were assisting [the government] in the [illegal] operation. Here, Vazquez had no contact with the alleged co-conspirators during the event of the seizures, and co-conspirators admitted that he had no knowledge of them dealing with the government agents. Id. Sears, at 141. Vazquez knew nothing of co-conspirators involvement with Texas supplier Ismael Lechuga and yet, such individual worked for the government and can be classified as agent for the government, which means that agent Lechuga as a matter of law, could not and should not have conspired with Vazquez.

Illustrating is the fact that in this particular case, counsel simply opted to waive conducting a reasonable investigation by interviewing co-defendants. Here, Jose Roman, and Jesus Cepeda were willing to testify during trial, the fact that they provided Vazquez with an affidavit, shows willingness to this court. As a matter of law, "to prevail on a claim of ineffective assistance of counsel for failing to call a witness, the petitioner must name the witness, and demonstrate that the witness was available to testify, also show that the testimony would have been favorable to a particular defense." See. Gannaway v. United States, Civ. No. 3:13-CV-1635-T-30 MAP. 2014 U.S. Dist. LEXIS 11639, 2014 WL 345740, *5 (M.D. Fla. Jan. 30, 2014) (citation omitted). In the case at hand, Vazquez provides a sworn declaration affidavit by Jesus Cepeda Cano and Jose Roman. **(See. Exhibit C, D.).**

According to the sworn declarations by both Jose Roman and Jesus Cepeda, counsel would have learned that Vazquez did not enter into any agreement, neither organized nor participated in any of the alleged activities with either of the two. Having such a decisive information at hand could have likely provided counsel with a different and substantive defense. Counsel could have put the government in a very different position in proving its case, as the burden of proof could have shifted against the government's theory. In any event counsel by having such a decisive information could have developed a different line of defense based on new discovered evidence. The outcome of Vazquez's case and proceedings would have been different but for counsel's errors.

## FAILURE TO INVESTIGATE THE LAW AND EVIDENCE

Counsel's duty is "to make reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." Ranson v.

Johnson, 126 F.3d 716, 723 (5ᵗʰ Cir. 1997) (citing Strickland v. Washington, 466 U.S. at. 691). At minimum, counsel should interview potential witnesses and independently investigate the facts and circumstances of the case. See. Bryant v. Scott, 28 F.3d 1411, 1415 (5ᵗʰ Cir. 1994). As stated previously, a simple request to interview witnesses during plea negotiations could have unearth a trove of information that could have been successfully used to object the PSR recommendations.

According to the PSR, Vazquez had coordinated or managed Jose Roman, Rodrigo Roman, Moises Ramos, Jesus Cepeda and Abel Cadena, directly or indirectly. As a result of this finding, the probation officer successfully recommended a two-point enhancement for Vazquez's aggravated role pursuant to U.S.S.G 3B1.1. But for counsel's lack of proper and reasonable investigation on the witnesses during plea negotiation proceedings, caused the court to adopt PSR recommendation. Vazquez's sentence was increased by 2-levels based on counsel's incompetence. Counsel could have presented both sworn affidavits by Jesus Cepeda and Jose Roman clarifying that Vazquez was not part of the conspiracy, did not distribute, sell or organized anything of their organization, and did no recruit neither of the two. As mentioned in the affidavits, both Cepeda and Roman were part of an independent organization which Vazquez was not part of and had no knowledge of.

Although Vazquez knowledges the existence of text messages among him and Lechuga, as mentioned before, Lechuga was acting as an agent for the government and could not be accounted as a co-conspirator or part of the conspiracy. (EFC No. 757 at. 10).

As the Court observed, Moises Ramos could not be accounted as a co-defendant neither, the record reveals that he had no direct communication with Vazquez for over five years, and such communication was carried through Jose Roman. Here, but for counsel's cumulative errors and for not conducting a proper and reasonable investigation in this case, Vazquez was convicted and sentenced to a draconian 196-month term of imprisonment.

Vazquez should prevail based on the cumulative counsel errors as he entered his plea agreement improvidently, with wrong advice, without understanding of the effect of the plea, or his rights.

## CONCLUSION

For the foregoing reasons, this Court should Vacate Vazquez's sentence and conviction and grant relief as this court deem appropriate under the circumstances

Executed and Signed this _25_ day of _April_ ,2019

Respectfully Submitted

*OMAR VAZQUEZ-AVENDANO*

Omar Vazquez-Avendano
Reg No. 51239-424
Federal Correctional Institution
Oakdale
P.O. Box 5010
Oakdale, LA. 71463

## CERTIFICATE OF SERVICE

I, Omar Vazquez-Avendano, hereby certify that I have served a true and correct copy of the following Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C 2255 by a Person I Federal Custody to the United States District Attorney's Office of the Southern District of Texas, McAllen Division, and deposited same in the United States mailing system at the Federal Correctional Institution, Oakdale on this _25_ day of _April_ , 2019.

Respectfully Submitted